**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0487n.06
Filed: July 13, 2006

**No. 04-2549**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| DAVID A. GOWARD, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |

Before: BOGGS, Chief Judge; KEITH and SUTTON, Circuit Judges.

**PER CURIAM**. Defendant, David A. Goward ("Goward"), was convicted by a jury in the

United States District Court for the Eastern District of Michigan on charges of drug crimes, firearm

violations, and embezzlement by a postal employee pursuant to 21 U.S.C. §§ 846 & 841(a)(1) and

18 U.S.C. §§ 922(g)(1) &1709. Goward appeals the district court order denying his motion to

suppress and asks this court to remand for resentencing consistent with *United States v. Booker,* 543

U.S. 220, 125 S. Ct. 738 (2005). For the reasons set forth below, we **AFFIRM** defendant's

convictions, but **VACATE** defendant's sentence and **REMAND** for resentencing in light of *Booker*.

**I.**

**A. Factual Background**

Goward's convictions and sentences arise from an investigation conducted by the Bay Area

Narcotics Enforcement Team ("BAYANET"). In the summer of 2002, BAYANET Officers Taylor

and Mainprize went to the residence of Dan Novak ("Novak") based on information they received

about possible marijuana trafficking . After being questioned by the officers, Novak agreed to be an informant on the large-scale marijuana trafficking operation run by Armondo Contreras ("Contreras") and Goward.

Novak informed the detectives that Contreras and Goward had been arranging for truck loads of marijuana to be shipped from Texas to Michigan for some time. On at least two prior occasions, Novak had allowed Contreras to deliver truck loads of marijuana to his place of employment. Novak explained that the truck would arrive early in the morning before the rest of the employees came to work and the marijuana would be unloaded. On the first delivery, Contreras along with the truck's driver unloaded the marijuana. On the second delivery, Goward was present to help unload the marijuana.

With Novak's cooperation, the BAYANET Officers arranged a number of controlled purchases of marijuana from Goward and Contreras. On July 10, 2002, Officer Taylor and Novak purchased a pound of marijuana for $1,500. Later that day, Goward called Novak asking him to steal approximately $500 of lumber from his place of employment in exchange for marijuana. On July 12, 2002, Novak and Officer Taylor delivered lumber to Goward for approximately four ounces of marijuana.

After these controlled purchases, Novak told the officers that Contreras and Goward were planning the delivery of another large truck load of marijuana to Saginaw, Michigan from Texas. Specifically, Novak told Officer Taylor that the marijuana was to be delivered to Novak's place of business, where it would be unloaded and hidden for several days until Goward and Contreras would be able to go there and break it up into smaller units. The BAYANET Officers set up a surveillance

video. On August 14, 2002, police witnessed a truck arriving at Novak's place of employment. Shortly thereafter, Contreras arrived and began unloading bricks of marijuana with the truck driver, co-defendant Chon Hinojosa ("Hinojosa"). While Contreras and Hinojosa were unloading the marijuana, the police arrested them. Goward, who is a part-time postal employee, was arrested later that morning while delivering mail on his route.

Soon after the seizure of the marijuana and the arrest of Contreras and Goward, the officers went to the Saginaw County Prosecutor's office to obtain search warrants for the relevant locations. One of these locations was Goward's residence, located at 2225 Birch Run Road. Officer Taylor submitted the affidavit for the warrant, which an assistant prosecutor drafted. Officer Taylor took the warrant to a state district judge, who authorized the search. The officers conducted a search of Goward's residence later that day. During the search, authorities seized 13 pounds of marijuana, $60,000 in cash, a dozen firearms, and over 400 pieces of undelivered mail.

## B. Procedural Background

Goward was indicted on September 25, 2002. In a second superseding indictment, he was charged with: conspiracy to distribute 1000 kilograms of marijuana; possession of 100 kilograms of marijuana with the intent to distribute; distribution of marijuana; possession of marijuana with intent to distribute; use of a firearm during a drug trafficking crime; being a felon in possession of firearms; and embezzlement by a postal employee. On January 30, 2003, Goward filed a motion to suppress evidence.

An evidentiary hearing was held on May 14, 2003. At the evidentiary hearing, Officer Taylor testified that he was the affiant for the warrant to search the 2225 Birch Run Road residence,

that an assistant state prosecuting attorney drafted the affidavit, and a that a state magistrate signed it. Taylor also stated that he had participated in the execution of over one hundred search warrants in his eighteen months as a BAYANET officer, five of which were procured where the sole nexus to the residence was that a known drug dealer lived there.

Officer Mainprize testified that he had been assigned to the BAYANET unit for ten years. He was familiar with the affidavit procured in this case, and he said that he had been involved in procuring over 200 such affidavits in Saginaw County. He stated that the fact pattern described in the affidavit in this case was very common.

The district court considered the arguments of the Defendants and issued an opinion denying the motion to suppress. Goward proceeded to trial on April 6, 2004. He was found guilty by a jury on charges of conspiracy to possess, with intent to distribute, 100 or more but less than 1000 kilograms of marijuana (21 U.S.C. § 846), distribution of marijuana (21 U.S.C.§ 841(a)(1)), possession with intent to distribute marijuana (21 U.S.C.§ 841(a)(1)), being a felon in possession of a firearm (18 U.S.C. § 922(g)(1)), and embezzlement of U.S. mail by a postal employee (18 U.S.C. § 1709). On December 15, 2004, Goward was sentenced to 121 months incarceration; and 4 years supervised release. Goward filed a timely appeal with this court.

## II. Analysis

**A.**

Goward contends that the district court erred in denying his motion to suppress evidence seized during the search of his residence. He asserts that the affidavit supporting the search warrant for 2225 Birch Run Road failed to establish probable cause. In particular, Goward argues that the

affidavit does not create a nexus between the residence to be searched and the facts of criminal activity set out in the officer's affidavit. Finally, Goward argues that the affidavit lacks particularity as it refers to his residence as a single-family structure. We disagree.

In his pretrial motion to suppress, Goward raised the objection that the affidavit failed to provide a sufficient nexus between his criminal activity and his residence. Therefore, we may review this assignment of error. When reviewing a district court's ruling on a motion to suppress, we will reverse findings of fact only if they are clearly erroneous. *United States v. Galloway,* 316 F.3d 624, 628 (6th Cir. 2003). "[L]egal conclusions as to the existence of probable cause are reviewed de novo." *United States v. Combs,* 369 F.3d 925, 937 (6th Cir. 2004) (citation omitted). "When the district court has denied the motion to suppress, we review all evidence in a light most favorable to the Government." *Galloway,* 316 F.3d at 628 (citation omitted).

In this case, Officer Taylor was the affiant. In two and a half pages, the affidavit detailed the undercover investigation, the controlled marijuana sales between the BAYANET Officers and the Defendants, and Contreras's and Goward's delivery of twenty-two bricks of marijuana to Novak's place of employment. Additionally, the affidavit describes the residence to be searched as follows:

> B. The entire premises and curtilage of 2225 Birch Run Road, Burt, Michigan, 48417. The dwelling is more fully described as a two story, single family residence. It is wood frame constructed with grey siding and white trim. There are several outbuildings including barns and sheds. The dwelling is located among farm fields. Search is to include all outbuildings and all containers located on the premises, including any vehicles located on the premises.
> . . .
> H. [sic] Novak told me that Goward stays at 2225 Birch Run Road, Burt, Michigan. I independently confirmed through Secretary of State records that Goward lists 2225 Birch Run Road as his address. Novak also informed me that Goward and Contreras store money from the sales of marijuana as well as marijuana itself at 6150 Greenwood Road in Roscommon County. Novak said that Novak has personally

been to the property on Greenwood Road with Contreras on previous occasions and [sic] seen ten to fifteen pounds of marijuana stored in the wellhouse on the property. Novak explained that Contreras and Goward hid money from the sales of marijuana in five gallon pails buried on the property. Novak said that Contreras purchased the property but that the property should be in Goward's sister's name. James Massey of the Saginaw County Prosecutor's Office checked with the Roscommon County Register of Deeds, and learned that the property at 6150 Greenwood Road is deeded to Lisa J. Espinoza, of 2225 Birch Run, Burt, Michigan, 48417. This is the same address the Secretary of State has for Goward.

(J.A. 138.)

The question before this court is whether an affidavit containing credible, verified allegations of drug trafficking, verification that said defendant lives at a particular residence, combined with the affiant-officer's experience that drug dealers keep evidence of dealing at their residence, when there is absolutely no indication of any wrongdoing occurring at that residence, establishes probable cause for the issuance of a warrant to search that residence. We are inclined to answer in the affirmative and side with our sister Circuits in believing that it is a reasonable inference that "in the case of drug dealers, evidence is likely to be found where the dealers reside." *United States v. Frazier*, 423 F.3d 526, 537 (6th Cir. 2005); *see also United States v. Miggins*, 302 F.3d 384, 394 (6th Cir. 2002) (citing cases from the First, Second, Fourth, Seventh, Eight, Ninth, and D.C. Circuits supporting the proposition that evidence of drug trafficking is likely to be found in the residence of the drug dealer); *United States v. Sparks*, 291 F.3d 683, 689-90 (10th Cir. 2002) (stating that given Sparks's connection to drug trafficking it was reasonable to believe that "there was a fair probability that additional evidence of crime (e.g., drug paraphernalia and/or sales records) would be found in Sparks' nearby residence"); *United States v. Hodge*, 246 F.3d 301, 306 (3d Cir. 2001) (where "facts combine to suggest that Hodge was an experienced and repeat drug dealer who would need to store

evidence of his illicit activities somewhere," it is reasonable to infer that "a person involved in drug dealing on such a scale would store evidence of that dealing at his home"); *United States v. Restrepo*, 994 F.2d 173, 188 (5th Cir. 1993) (finding probable cause to search drug dealer's home even though affidavit did not describe any drug activity there, as affiant with 11 years of experience "had observed that drug traffickers maintain records relating to drug activity at a place such as a home" and "that contraband, drug proceeds and other indicia of drug trafficking such as coded telephone numbers, photographs and firearms are secreted in safe places such as homes").

In *United States v. Miggins*, a warrant was obtained to search the defendant's apartment on the basis that he previously had been convicted of narcotics offenses, he was involved in a large drug transaction set-up to occur at one location, and he resided at the apartment in question some distance away. The district court held that there was insufficient probable cause to issue the search warrant, although the search was upheld on the basis of the "good faith" exception to the exclusionary rule announced in *United States v. Leon*, 468 U.S. 897 (1984). *See Miggins*, 302 F.3d at 388. This court held that the district court erred in finding a lack of probable cause. *Id*. at 393. In its reasoning, the court cited several cases from our sister circuits to support the position that it is reasonable to suppose that a drug dealer stores narcotics and equipment used in the distribution of narcotics at his home, even though no drug trafficking was observed to occur there. *Id.* at 394. We reaffirm our decision in *Miggins*.

In the instant case, the affidavit provides evidence that Goward was involved in a marijuana smuggling operation along with Contreras, this operation was witnessed by an undercover officer who was sold the marijuana, and there was sufficient and independent proof that Goward lived at

2225 Birch Run Road. Additionally, in both his affidavit and at the motion to exclude hearing, Officer Taylor stated that in his years of experience and training that drug dealers kept narcotics, paraphernalia, and weapons at their residence. *Id.* at 393-94; *see also* 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.7(d) (4th ed. 2004) (explaining that it is commonly held across the Circuits that there is sufficient nexus between drug trafficking, evidence of drug trafficking, and a drug dealer's residence "merely on the basis of the affiant-officer's experience that drug dealers ordinarily keep their supply, records and monetary profits at home"). Accordingly, drug trafficking, which the affiant witnessed and is further substantiated from his experience and training, establishes a sufficient nexus to support a finding of probable cause to search the place where the drug trafficker presently lives.

Of course, there is a difference between a drug dealer and a drug user. In most cases, it would be inappropriate for officers who had verifiable evidence of possession of small amounts of drugs for personal use, without further indication of any wrongdoing occurring at that person's residence, to infer a reasonable nexus between that criminal activity and the existence of related criminal activity at the residence. Moreover, the district court, citing *United States v. Schultz*, 14 F.3d 1093 (6th Cir. 1994), is correct in its assertion that "evidence of involvement in drug trafficking does not automatically establish probable cause to search any location connected with the wrongdoer." (J.A. 85.) In *Schultz*, we held that there was no probable cause to search the defendant's safety deposit box, even though the officer's affidavit said that "based on his training and experience" he believed drug records would be there. *Id*. at 1097. The court held that such assertion was nothing "more than a guess" and "it cannot substitute for the lack of evidentiary nexus

in this case, prior to the search, between the safe deposit boxes and any criminal activity." *Id.* The search of Schultz's residence, however, was proper.

Additionally, our careful consideration of the record suggests that we may only review Goward's claim that the affidavit did not create a sufficient nexus between his residence and his criminal drug trafficking activity. His claim that the affidavit lacks particularity because it refers to his home as a two-story single family residence and not a two story home with an upstairs apartment was not raised before the district court. The Federal Rules of Criminal Procedure require that a motion to suppress evidence must be made before trial. FED. R. CRIM. P. 12. Goward did make such a motion, but failed, however, to raise any claim of particularity in regard to the affiant's description of the place to be searched as a single family residence.

In *United States v. Critton,* 43 F.3d 1089, 1093-94 (6th Cir. 1995), a defendant challenged the grounds to suppress evidence that differed from those challenges unsuccessfully raised before the district court. Upon review, this court stated that it was without "jurisdiction to hear appeals of suppression issues raised for the first time on appeal." *Id.* at 1093 (citing *United States v. Crismon,* 905 F.2d 966, 969 (6th Cir. 1990)). The court further opined that "a defendant who fails to raise a specific issue as the basis for suppression 'has waived the right to raise that issue on appeal.'" *Id.* (quoting *United States v. Yannott,* 42 F.3d 999, 1005 (6th Cir.1994)).

Assuming *arguendo* that there was not probable cause supporting the issuance of a search warrant for Goward's residence at 2225 Birch Run Road, the search still would have been proper under the *Leon* good-faith exception. *Leon*, 468 U.S. at 905. The district court's decision to deny Goward's motion to suppress was proper.

**B.**

Finally, Goward raises a *Booker* claim regarding his sentence under the mandatory regime. *See Booker,* 543 U.S. 220. As this court found in *United States v. Barnett,* 398 F.3d 516, 530 (6th Cir. 2005), Goward's sentence "was imposed under a framework that has now been substantially altered." The government concedes that this case is appropriate for resentencing. Therefore, we vacate defendant's sentence and remand for resentencing.

### III. Conclusion

For the above reasons, we **AFFIRM** defendant's convictions, but **VACATE** defendant's sentence and **REMAND** for resentencing consistent with *Booker*.