RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0078p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    *Plaintiff-Appellant*,

  *v.*

TERRY REED,

    *Defendant-Appellee*.

No. 20-5631

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:19-cr-20165-1—John Thomas Fowlkes, Jr., District Judge.

Decided and Filed:  April 1, 2021

Before:  CLAY, READLER, and MURPHY, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Naya Bedini, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellant.  Robert L. Thomas, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellee.

  MURPHY, J., delivered the opinion of the court in which READLER, J., joined.  CLAY, J. (pp. 17–26), delivered a separate dissenting opinion.

_____

## OPINION

_____

  MURPHY, Circuit Judge.  This case raises a recurring Fourth Amendment question. Suppose that the police uncover evidence that an individual is illegally selling drugs.  When does that evidence create probable cause to search the individual's home for drugs, drug proceeds, or other evidence of drug dealing?  We have "struggled" to answer this question in a consistent way

because it implicates two competing principles. *United States v. Ardd*, 911 F.3d 348, 351 (6th Cir. 2018). Under the first principle, probable cause to arrest a suspect for a crime does not necessarily create probable cause to search the suspect's home. So our cases, at times, say that officers need additional evidence of a "nexus" between the drug dealing and the dealer's home. *United States v. Brown*, 828 F.3d 375, 383–84 (6th Cir. 2016). Under the second principle, the probable-cause test allows officers to make common-sense conclusions about where people hide things. So our cases also say that evidence of a drug dealer's ongoing drug activity can sometimes create this nexus to search the dealer's home. *United States v. Sumlin*, 956 F.3d 879, 886 (6th Cir. 2020).

It can be difficult to decide which of these principles controls. The judicial disagreement in this case over whether the police had probable cause to search Terry Reed's home proves the point. Relying on the second principle, a magistrate judge held that probable cause existed because an officer's affidavit showed that Reed was a drug dealer engaged in ongoing drug activity. Relying on the first, the district court held that probable cause did not exist because the affidavit lacked other evidence connecting Reed's drug activity to his home. Yet we need not decide who was right. This appeal concerns only whether the district court properly suppressed the evidence discovered during the search despite a state judge's warrant to undertake it. Even when a search violates the Fourth Amendment, the Supreme Court has held that courts should not suppress evidence if the police reasonably relied on a judge's decision that probable cause justified a warrant. *United States v. Leon*, 468 U.S. 897, 922–23 (1984). And given our "unsettled jurisprudence" on this nexus question, the police could reasonably rely on the judge's finding that Reed's ongoing drug activity provided probable cause to search his home. *United States v. Hodge*, 246 F.3d 301, 309 (3d Cir. 2001) (Alito, J.). Without deciding the thornier constitutional question, then, we hold only that the district court should not have suppressed the evidence. We reverse.

I

Officers with the police department in Memphis, Tennessee, came to suspect Reed of distributing marijuana. Ultimately, on May 17, 2018, Detective Brandon Evans filed three affidavits seeking search warrants for three locations. Evans's first affidavit sought a warrant to

search the business "OK Tire" for marijuana, drug paraphernalia, and drug-related records. In this affidavit, Evans described his training and experience and indicated that he had been investigating Reed's drug trafficking. Within the last five days, Evans explained, a confidential informant had made a controlled buy from Reed at the OK Tire and had seen Reed "selling and storing marijuana" there. The purchased substance tested positive for THC. Evans noted that Reed's girlfriend, Dominique Johnson, had witnessed the buy and that a computer search had identified her as the business's owner. Evans added that he had surveilled Johnson and Reed leaving their home on Kate Bond Road and traveling to the OK Tire. He had also seen both of them use their own set of keys to open the business on different occasions. Evans lastly described the informant's reliability: The informant had been responsible for several prior drug seizures and had provided information about drug houses that had been corroborated through additional police work.

Evans's second affidavit sought a warrant to search a home on Orchi Road for the same evidence. In this affidavit, Evans noted that Reed's mother lived at the Orchi Road address and that Reed's driver's license listed it. Evans also indicated that the confidential informant had made a controlled buy from Reed at this home within the last 20 days. Surveilling this buy, Evans watched Reed walk out of the house and sell marijuana to the informant. Evans again explained that the purchased substance tested positive for THC. Aside from the controlled buy, Evans stated that he had watched Reed drive the streets near this home in a maroon Mustang and "conduct hand to hand transactions" with individuals. Within the last five days, Evans added, he saw Reed drive a brown Cadillac Escalade and park it at the home. Evans also watched people pull into the home's driveway. Reed would come out and engage in hand-to-hand transactions with these individuals. Evans noted that "[o]n some occasions" the individuals would "hand Reed money and Reed would in turn hand them a clear bag with an unknown substance." Evans lastly indicated that Reed had four prior felony drug convictions and two prior misdemeanor drug convictions.

Evans's third affidavit sought a warrant to search Reed and Johnson's home on Kate Bond Road for financial records and drug proceeds (but not for drugs). In this affidavit, Evans again recounted his experience investigating drug crimes and the informant's controlled buys

from Reed at the other two locations. Evans noted that Johnson had active utilities in her name at the home on Kate Bond Road and that she and Reed had lived together at different homes in Memphis. Evans also indicated that he had watched Reed and Johnson leave this home in the brown Cadillac Escalade. The informant had likewise confirmed to Evans that Johnson and Reed lived together.

A state judge decided that probable cause existed to issue search warrants for all three locations (and signed the warrants within a minute of each other). Officers executed the warrants the next day. They seized nothing from the OK Tire and only baggies and a digital scale from the Orchi Road home. But the search of the home on Kate Bond Road uncovered two guns, about 18 rounds of ammunition, 18.7 grams of marijuana, 2.1 grams of THC wax, and $5,636 in cash.

After the search, Reed waived his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). He confessed that the guns and drugs belonged to him and that he had been selling marijuana.

The government indicted Reed on five counts: one count of possession with the intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); two counts of possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c); and two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Reed moved to suppress the evidence obtained from the search of his home on Kate Bond Road, including his statements to police. He argued that the affidavit in support of this warrant failed to identify a "nexus" between his drug dealing and the home so as to raise an inference that drug records or proceeds would be found there. Reed also argued that the affidavit was so deficient that the judge's warrant could not avoid the exclusionary rule under the good-faith exception from *United States v. Leon*, 468 U.S. 897 (1984).

A magistrate judge recommended that the district court deny Reed's motion. *United States v. Reed*, 2020 WL 5358310, at *8 (W.D. Tenn. Mar. 4, 2020). The judge noted that an affidavit in support of a search warrant must identify a probable-cause nexus between the place to be searched and the items to be seized. *Id.* at *5. But the judge concluded that this nexus existed based on our cases stating that officers can reasonably "infer that 'instrumentalities and

fruits' of drug trafficking may be found inside a known drug dealer's residence." *Id.* at *7 (citation omitted).

The district court disagreed and suppressed the evidence. *United States v. Reed*, 2020 WL 3050771, at *7 (W.D. Tenn. June 8, 2020). While acknowledging Reed's status as a "known drug dealer," the court held that Evans's affidavit fell short because it contained no allegations that Reed conducted drug activity at his home on Kate Bond Road. *Id.* at *1, *2–3. The court next held that *Leon*'s good-faith exception did not apply. *Id.* at *4–5. It reasoned that Evans should have known that the affidavit needed to contain more allegations than "the fact that [Reed], who happens to be a drug dealer, resides" at the home. *Id.* at *5. This conclusion led the court to suppress both the evidence recovered from the home and Reed's statements after the search. *Id.* at *5–7.

The government has filed an immediate appeal from the district court's suppression order. *See* 18 U.S.C. § 3731. It argues only that the district court should have applied *Leon*'s good-faith exception to the exclusionary rule. We review the question whether *Leon* applies de novo. *See United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005).

II

A

The Fourth Amendment (applicable to state officers through the Fourteenth Amendment) commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Designed to prohibit the general warrants common at the time of the founding, this text requires that a warrant specifically identify the "place" to be searched and the "things" to be seized. *Id.*; *see Ashcroft v. al-Kidd*, 563 U.S. 731, 742–43 (2011). And courts have long held that a probable-cause "nexus" must connect these two together: There must be a fair probability that the specific place that officers want to search will contain the specific things that they are looking for. *See United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc); *see also Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).

This case implicates a common "nexus" problem. Assume that officers reasonably conclude that a person has committed a crime (say, a robbery) away from the person's home. When may the officers obtain a warrant to search the suspect's home for evidence of the crime (say, the gun used or money taken)? This issue raises conflicting concerns. On the one hand, probable cause to arrest a suspect does not necessarily establish probable cause to search the suspect's home. *See United States v. Baker*, 976 F.3d 636, 645–46 (6th Cir. 2020). Rather, the arrest and search inquiries ask different questions: whether there is a fair probability that a person has committed a crime versus whether there is a fair probability that the person's home will contain evidence of one. *See United States v. Savoca*, 761 F.2d 292, 297 (6th Cir. 1985). And, of course, the Fourth Amendment treats the home as "first among equals." *Florida v. Jardines*, 569 U.S. 1, 6 (2013). Its "core" protection allows individuals to "retreat into" their home and "be free from unreasonable governmental intrusion" there. *Id.* (citation omitted).

On the other hand, probable cause is a "practical and common-sensical standard[.]" *Florida v. Harris*, 568 U.S. 237, 244 (2013). It requires only "the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 231, 238 (1983)). So many courts have acknowledged as a common-sense matter that a suspect's home often will be a likely place that the suspect has kept evidence of a crime. *See United States v. Williams*, 544 F.3d 683, 688 (6th Cir. 2008) (collecting cases). All things being equal, for example, "it is reasonable . . . to assume that a person keeps his possessions where he resides." *Peffer v. Stephens*, 880 F.3d 256, 270 (6th Cir. 2018).

These competing concerns have pulled courts in both directions when they have tried to answer this nexus question. The result? Courts have drawn fine lines between cases with "little to distinguish" those that find probable cause from those that do not. *Savoca*, 761 F.2d at 298. This tension may be explained, in part, by the nature of the task. The probable-cause test requires courts to consider the totality of the circumstances in each case, so "one determination will seldom be a useful 'precedent' for" the next. *Id.* at 297 (quoting *Gates*, 462 U.S. at 238 n.11). To promote greater consistency, though, we have identified several recurring factors. Whether the police may "infer a nexus between a suspect and his residence," we have said, turns on "the type of crime being investigated, the nature of the things to be seized, the extent of an

opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." *Williams*, 544 F.3d at 687 (quoting *Savoca*, 761 F.2d at 298).

The type of crime in this case—drug dealing—shows the difficulty of providing "guidance for such a fact-bound legal determination." *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016). With categorical statements pointing in opposite directions, our decisions "have struggled to identify the quantum of evidence needed to connect drug trafficking by an individual to a probability that evidence will be found at the individual's residence." *United States v. Ardd*, 911 F.3d 348, 351 (6th Cir. 2018). When finding probable cause to search a home, we have asserted broad propositions like: "[I]n the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Sumlin*, 956 F.3d 879, 886 (6th Cir. 2020) (quoting *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998)); *see, e.g.*, *United States v. Feagan*, 472 F. App'x 382, 392 (6th Cir. 2012); *United States v. Gunter*, 551 F.3d 472, 481–82 (6th Cir. 2009); *United States v. Goward*, 188 F. App'x 355, 358–59 (6th Cir. 2006) (per curiam); *United States v. Newton*, 389 F.3d 631, 635–36 (6th Cir. 2004) (vacated on other grounds); *United States v. Miggins*, 302 F.3d 384, 393–94 (6th Cir. 2002). These decisions suggest that courts generally may find a nexus to search a drug dealer's home "even 'when there is absolutely no indication of any wrongdoing occurring'" there. *Sumlin*, 956 F.3d at 886 (quoting *Goward*, 188 F. App'x at 358–59).

When finding the absence of probable cause to search a home, by contrast, we have rejected "the proposition that the defendant's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home." *Brown*, 828 F.3d at 383 (quoting *Frazier*, 423 F.3d at 533); *see, e.g.*, *United States v. Fitzgerald*, 754 F. App'x 351, 361 (6th Cir. 2018); *United States v. Bethal*, 245 F. App'x 460, 466–67 (6th Cir. 2007). These decisions suggest that courts generally may not find a nexus to search a drug dealer's home when "the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, or the evidence of this connection is unreliable[.]" *Brown*, 828 F.3d at 384.

Although these statements may appear to conflict on a first (or second) read, we have reconciled our caselaw in fact-specific ways. Most obviously, a court need not rely on a known drug dealer's status *alone* whenever other evidence (besides the dealer's living there) links drug

dealing to the dealer's home. We have, for example, found a probable-cause nexus to search a drug dealer's home when the police watched the suspect leave a home, undertake a drug deal, and return there. *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011); *see United States v. Coleman*, 923 F.3d 450, 457–58 (6th Cir. 2019); *United States v. Houser*, 752 F. App'x 223, 226–27 (6th Cir. 2018); *United States v. Jenkins*, 743 F. App'x 636, 644 (6th Cir. 2018). We have found this nexus when drugs were found in the drug dealer's car near the home. *United States v. Berry*, 565 F.3d 332, 339 (6th Cir. 2009). And we have found it when a suspect caught with drugs lied about his home address. *United States v. Caicedo*, 85 F.3d 1184, 1193 (6th Cir. 1996).

Even if no specific evidence ties drug dealing to a home, we have also called it "well established" that a nexus to search the home can exist if a suspect's drug dealing is "ongoing" at the time the police seek the warrant. *Feagan*, 472 F. App'x at 392; *see Gunter*, 551 F.3d at 481–82; *Goward*, 188 F. App'x at 358; *Miggins*, 302 F.3d at 388; *see also United States v. Kenny*, 505 F.3d 458, 461–62 (6th Cir. 2007). When an officer identifies "recent, reliable evidence of drug activity," *United States v. McCoy*, 905 F.3d 409, 418 (6th Cir. 2018), that activity can provide a "reason to believe that drugs or other evidence of crime [will] be found in the suspect's" home beyond the suspect's status as a drug dealer *alone*, *see Peffer*, 880 F.3d at 273.

Conversely, we have also relied on fact-specific rationales when limiting the principle that a drug dealer's ongoing drug operations can create probable cause to search the dealer's home. In some cases, the officer's affidavit showed that the suspect had engaged in, at most, one drug transaction. *See Fitzgerald*, 754 F. App'x at 360; *Brown*, 828 F.3d at 378–80, 382–84. In others, the affidavit described stale drug activity from a significant time ago. *See United States v. Ward*, 967 F.3d 550, 555–57 (6th Cir. 2020) (citing *United States v. Hython*, 443 F.3d 480, 486 (6th Cir. 2006)). In still others, the affidavit failed to show that the relevant home belonged to a drug dealer. One defendant was not a known drug dealer and may have possessed drugs only for personal use, *see United States v. McPhearson*, 469 F.3d 518, 524–25 (6th Cir. 2006), while another had been described as a drug dealer only by an unreliable informant, *see Frazier*, 423 F.3d at 533; *see also Bethal*, 245 F. App'x at 467.

For what it is worth, other courts struggle with this issue too.  They have broadly stated that probable cause can exist to search a drug dealer's home "on the basis of the affiant-officer's experience (or, for that matter, the magistrate's own common-sense judgment) that drug dealers ordinarily keep their supply, records and monetary profits at home."  2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.7(d) (6th ed.), Westlaw (database updated Sept. 2020).  As the D.C. Circuit put it, "[w]hen there is probable cause that a defendant is dealing drugs, there often tends to be probable cause that evidence of that drug dealing will be found in the defendant's residence."  *United States v. Cardoza*, 713 F.3d 656, 661 (D.C. Cir. 2013) (Kavanaugh, J.); *see also United States v. Dixon*, 787 F.3d 55, 60 (1st Cir. 2015); *United States v. Hodge*, 246 F.3d 301, 306 (3d Cir. 2001); *United States v. Grossman*, 400 F.3d 212, 217–18 (4th Cir. 2005); *United States v. Haynes*, 882 F.3d 662, 666 (7th Cir. 2018) (per curiam); *United States v. Ross*, 487 F.3d 1120, 1123 (8th Cir. 2007); *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986); *United States v. Biglow*, 562 F.3d 1272, 1278–80, 1283 (10th Cir. 2009); *United States v. Cunningham*, 633 F. App'x 920, 922 (11th Cir. 2015) (per curiam).

Yet some of these courts also suggest that they do not follow a "per se rule automatically permitting the search of a defendant's home when he has engaged in drug activity."  *United States v. Roman*, 942 F.3d 43, 51 (1st Cir. 2019).  Instead, they have, at times, noted that probable cause may require some small amount of "additional evidence" beyond a suspect's drug-dealer status.  *Biglow*, 562 F.3d at 1279 (citation omitted).  One court, for example, listed other potentially relevant factors, including whether the suspect was engaged in "large-scale operations," whether the affidavit was based on "the conclusions of experienced officers regarding where evidence of a crime is likely to be found," whether the defendant's home was in the same general area of the drug activity, and whether probable cause existed to arrest the defendant for drug crimes.  *United States v. Rosario*, 837 F. App'x 117, 120 (3d Cir. 2020) (citation omitted).

B

When judged under these probable-cause standards, the facts of this case sit on the hazy constitutional border between a sufficient nexus and an insufficient hunch.  But we need not resolve this probable-cause question.  The government does not now argue that the search of

Reed's home on Kate Bond Road comported with the Fourth Amendment. Rather, the parties debate only the proper remedy: Should the district court have suppressed the recovered evidence? We may resolve this case on this narrower remedy ground. *Cf. Ardd*, 911 F.3d at 351.

The Supreme Court's exclusionary rule bars the government from admitting incriminating evidence at a defendant's trial if the police violated the Fourth Amendment when discovering the evidence. *See Mapp v. Ohio*, 367 U.S. 643, 654 (1961). Yet the exclusionary rule does not reach all Fourth Amendment violations no matter the circumstances. *See Davis v. United States*, 564 U.S. 229, 237–38 (2011). Because the amendment "contains no provision expressly precluding the use of evidence obtained in violation of its commands," *Arizona v. Evans*, 514 U.S. 1, 10 (1995), the Supreme Court has "felt free to adjust the rule's scope" by considering whether its benefits outweigh its costs in particular settings, *Baker*, 976 F.3d at 646.

This case's setting involves a search pursuant to a warrant issued by a state judge. When a judge issues a warrant, the judge has made the independent decision that probable cause exists for the search. *Leon*, 468 U.S. at 921. Because most police officers are not lawyers, they may be expected to defer to the judge's legal conclusion in that regard. *See id.* So if it later turns out that probable cause did not exist, the judge will typically be the blameworthy party, not the officer who relied on the judge's legal mistake. *See Davis*, 564 U.S. at 239. Yet the exclusionary rule seeks to deter police (not judicial) misconduct. *See id.* And the officer's objective reliance on the judge's probable-cause opinion does not show the type of "flagrancy" required for the exclusionary rule's benefits to outweigh its costs. *Id.* at 237–38 (quoting *Leon*, 468 U.S. at 911). In *Leon*, therefore, the Court held that the exclusionary rule generally should not apply when officers obtain a warrant from a neutral judge. *See* 468 U.S. at 922–23.

That said, *Leon* identified several circumstances in which officers would be sufficiently blameworthy to trigger the exclusionary rule despite a judge's warrant (such as when the officers lie to obtain it). *See United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017). As relevant here, *Leon*'s good-faith exception to the exclusionary rule does not apply if an officer's affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." 468 U.S. at 923 (citation omitted). This type of affidavit—

what we have called a "bare-bones affidavit"—shows that the officer recklessly relied on the judge's decision that probable cause existed for the warrant. *White*, 874 F.3d at 496.

*Leon*'s good-faith exception extends to this case's nexus question. Even if an affidavit describing a suspect's drug activity does not establish a probable-cause nexus between the place to be searched and the evidence of that activity, the affidavit will avoid the bare-bones label so long as it identifies a "minimally sufficient" nexus between the two. *Carpenter*, 360 F.3d at 596; *see also, e.g.*, *McCoy*, 905 F.3d at 416; *Jenkins*, 743 F. App'x at 645. What is the difference between a proper nexus (sufficient for probable cause) and a minimal one (sufficient for *Leon*)? There obviously "must be daylight" between the two standards because *Leon*'s exception applies only when an affidavit falls short of probable cause. *White*, 874 F.3d at 497; *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004). We have described a minimally sufficient nexus as one in which there is "some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched." *McCoy*, 905 F.3d at 416 (quoting *White*, 874 F.3d at 497).

C

Does a minimal connection exist in this case? Yes, *Leon*'s good-faith exception applies because Detective Evans could reasonably rely on the state judge's conclusion that probable cause existed to search Reed's home on Kate Bond Road. We reach this conclusion for several reasons.

*First*, Reed does not dispute two critical points. Point One: The police had probable cause to believe that Reed was a drug dealer who had engaged in recent drug sales. A reliable informant had made controlled buys from Reed at the Orchi Road residence (within the last twenty days) and at the OK Tire (within the last five days). Evans had also seen Reed engaged in suspicious transactions near the Orchi Road home and had confirmed Reed's many prior drug convictions.

Point Two: The police had probable cause to believe that Reed lived at the home on Kate Bond Road. His girlfriend had utilities in her name at this address and Evans knew that the two had lived together at other Memphis homes. The informant likewise relayed to Evans that

Johnson and Reed currently lived together. Evans also connected the brown Cadillac Escalade parked at the home on Orchi Road during Reed's suspected drug sales to the one Evans saw at the home on Kate Bond Road. And Evans had watched Reed leave this home and travel to the OK Tire.

These undisputed points go a long way toward showing that *Leon*'s good-faith exception applies. Indeed, when we have rejected *Leon*'s exception in the past, the police generally lacked reliable proof that the defendant was recently (or ever) engaged in drug dealing. In that respect, the probable cause to believe that Reed was a drug dealer distinguishes several of our decisions that refused to apply *Leon*'s exception based on a lack of such proof. *See McPhearson*, 469 F.3d at 526–27; *cf. Brown*, 828 F.3d at 384; *Bethal*, 245 F. App'x at 468. Likewise, the probable cause to believe that Reed engaged in recent drug deals distinguishes other decisions that refused to apply *Leon*'s exception on staleness grounds. *See Ward*, 967 F.3d at 556–57; *Brown*, 828 F.3d at 385; *Hython*, 443 F.3d at 486–87; *United States v. Laughton*, 409 F.3d 744, 751 (6th Cir. 2005).

*Second*, Detective Evans could reasonably conclude that Reed's ongoing drug dealing sufficed to trigger our "well established" principle "that if there is probable cause to suspect an individual of being an ongoing drug trafficker, there is a sufficient nexus between the evidence sought and that individual's home." *Feagan*, 472 F. App'x at 392. Critically, our precedent leaves unclear the amount of drug activity required to invoke this nexus principle. Sometimes we have suggested that it applies to "a large, ongoing drug trafficking operation." *Brown*, 828 F.3d at 383 n.2. Other times, though, we have suggested that it can apply based on "recent, reliable evidence of drug activity." *McCoy*, 905 F.3d at 418. Evans's affidavits at least showed this much.

In light of our "unsettled jurisprudence" regarding the amount of required drug activity, Evans did not behave recklessly by relying on the state judge's conclusion that Reed's drug activity sufficed. *Hodge*, 246 F.3d at 309; *see Ross*, 487 F.3d at 1124; *United States v. Nolan*, 199 F.3d 1180, 1185 (10th Cir. 1999). The conflicting opinions in the district court confirm that this case falls within the twilight zone left by our decisions. The magistrate judge found probable cause to search Reed's home based on one "line of cases holding 'that an issuing judge

may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking.'" *Reed*, 2020 WL 5358310, at *6 (citation omitted). The district court then found the absence of probable cause based on another line of cases holding that "[t]he mere fact that someone is a drug dealer is not alone sufficient to establish probable cause to search their home." *Reed*, 2020 WL 3050771, at *7 (citation omitted). We cannot fault Evans (or the state judge) for concluding that probable cause exists because of this room for reasonable legal debate. *See Ross*, 487 F.3d at 1123.

*Third*, Evans did not rely on Reed's drug activity alone. His affidavit described his experience investigating drug crimes, noting that "he has participated in numerous drug arrests, drug seizures, and drug investigations during his career as a police officer." And Evans indicated that his belief that probable cause existed to search Reed's home was based, in part, on this experience. In many cases, courts have highlighted an "affiant officer's experience that drug dealers keep evidence of dealing at their residence" as an additional reason to find probable cause to search the drug dealer's home. *Sumlin*, 956 F.3d at 886 (quoting *Goward*, 188 F. App'x at 358); *see also Ross*, 487 F.3d at 1123. Here, Evans's experience at least provides another reason to trigger *Leon*'s exception. *See, e.g.*, *United States v. Acosta-Barrera*, 819 F. App'x 366, 372 (6th Cir. 2020); *Ardd*, 911 F.3d at 352; *United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir. 1994). We already made this point in *Schultz*, which addressed the search of a defendant's safe-deposit box. 14 F.3d at 1098. The police in that case had probable cause to believe that the defendant had engaged in a drug crime. *Id.* Although that fact did not suffice to create probable cause to search the safe-deposit box, we nevertheless applied *Leon*'s good-faith exception to that search. *Id.* To do so, we relied on the officer's suggestion that, in his training and experience, drug dealers sometimes keep drug records in safe-deposit boxes. *Id.*

*Fourth*, when assessing the reasonableness of Detective Evans's conduct, we cannot lose sight of "the fact-intensive nature of the probable cause inquiry in known drug dealer cases[.]" *Brown*, 828 F.3d at 384. Because probable cause entails a deep dive into the totality of the circumstances, "officers will often find it difficult to know how the general standard . . . applies in 'the precise situation encountered.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (citation omitted). As we have said, "[t]he factual gradations in this type of case are often

difficult to discern even after a studied examination of the various judicial opinions." *Savoca*, 761 F.2d at 298. Given our "struggle" to reconcile our caselaw, *Brown*, 828 F.3d at 382, in these "frothy" nexus "waters," *Ardd*, 911 F.3d at 351, how can we expect nonlawyer officers to know better than judges that their affidavits do not suffice except in obvious cases? The "imprecise nature" of this inquiry supports our conclusion that Evans's actions fall within the range of reasonableness permitted by *Leon*. *See Wesby*, 138 S. Ct. at 590; *cf. Renico v. Lett*, 559 U.S. 766, 776 (2010).

D

Reed's responses fall short. He suggests that we should review the government's *Leon* claim only for plain error because the government failed to preserve the claim in the district court. Not so. Unlike in cases in which the government raised no *Leon* claim in the district court, *cf. United States v. Hahn*, 922 F.2d 243, 247–48 (5th Cir. 1991), the magistrate judge and district court both recognized that the government raised such a claim here, *Reed*, 2020 WL 5358310, at *6 n.6; *Reed*, 2020 WL 3050771, at *4. Reed responds that the government did not raise one subsidiary argument—that the court may consider all three of Detective Evans's affidavits when deciding whether the *Leon* exception applies. We fail to see how this fact would subject the government's *entire* claim to plain-error review. Nor did the government forfeit its sub-argument. Our forfeiture cases "recognize[] a distinction between failing to properly raise a claim before the district court and failing to make an argument in support of that claim." *United States v. Hamm*, 952 F.3d 728, 742 (6th Cir. 2020) (quoting *Leonor v. Provident Life & Accident Co.*, 790 F.3d 682, 687 (6th Cir. 2015)). Along those lines, we typically find no forfeiture on appeal when "a particular authority or strain of the argument was not raised below, as long as the issue itself was properly raised." *Mills v. Barnard*, 869 F.3d 473, 483 (6th Cir. 2017). Because the government properly raised its *Leon* argument in the district court, that rule applies here.

If anything, Reed's plain-error argument undercuts his claim against *Leon*. To begin with, Reed does not challenge the merits of the government's argument that we may consider all three affidavits. Nor could he. We have held that "a court reviewing an officer's good faith under *Leon* may look beyond the four corners of the warrant affidavit to information that was known to the officer and revealed to the issuing magistrate." *Frazier*, 423 F.3d at 535–36; *cf.*

*United States v. Davis*, 970 F.3d 650, 666 (6th Cir. 2020).  And as the federal magistrate judge found in this case, the state judge had the sworn facts in the other affidavits (such as the fact that Reed had many prior felony drug convictions) "before her at the time the three search warrants were issued."  *Reed*, 2020 WL 5358310, at *2 n.2; *see also Reed*, 2020 WL 3050771, at *1.  In addition, Reed's plain-error argument concedes that our law is "unsettled" "regarding the validity of a warrant based solely on an individual's drug activity[.]"  Appellee's Br. 18.  That admitted lack of clarity shows why Detective Evans could reasonably rely on a judge's finding that Reed's drug activity sufficed to establish probable cause.  *See Ross*, 487 F.3d at 1124; *Hodge*, 246 F.3d at 309.

Even considering all three affidavits, Reed next notes, Evans did not identify *enough* recent drug activity to provide probable cause to search his home.  We agree that our prior decisions finding probable cause based on drug activity have involved larger amounts of drugs. *See United States v. Davis*, 751 F. App'x 889, 891 (6th Cir. 2018) ("11 kilograms" of cocaine); *Feagan*, 472 F. App'x at 384–85 (kilograms of cocaine); *Gunter*, 551 F.3d at 481 ("repeated purchases of cocaine in the one to four kilogram range"); *Kenny*, 505 F.3d at 461 ("a methamphetamine lab" "along with a kilo of methamphetamine"); *Goward*, 188 F. App'x at 358 ("controlled marijuana sales" and "delivery of twenty-two bricks of marijuana"); *Newton*, 389 F.3d at 634 (large marijuana transactions); *Miggins*, 302 F.3d at 393 ("one kilogram of cocaine").  But we have never squarely held that a certain volume of drug activity was necessary to provide probable cause to search a drug dealer's home.  *Cf. McCoy*, 905 F.3d at 417. Regardless, we need not decide whether Reed's two controlled buys and other suspicious activity sufficed in this case.  As noted, we have made inconsistent statements on the amount of required drug activity.  *Compare McCoy*, 905 F.3d at 418 & n.5, *with Brown*, 828 F.3d at 383 n.2.  And Evans could reasonably believe that the *ongoing* nature of Reed's drug dealing (as compared to the *quantity* of drugs sold) is what creates the fair probability that evidence would be located at his home.  *Cf. Peffer*, 880 F.3d at 273.  At the least, the evidence of Reed's recent drug transactions was not "so vague as to be conclusory or meaningless" under *Leon*'s good-faith exception.  *Carpenter*, 360 F.3d at 596.

Reed lastly notes that, unlike in other cases, Evans's affidavit indicated *generally* that his experience supported his belief that probable cause existed; the affidavit did not state *specifically* that, in Evans's "experience, drug dealers often keep evidence of their criminal activity at their homes." *Ardd*, 911 F.3d at 352; *Goward*, 188 F. App'x at 358–59. But we assess an affidavit "on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc). And we must "read the affidavit reasonably" by "employing a healthy dose of common sense." *White*, 874 F.3d at 502. So "[i]f an inference is obvious from the factual context, a reviewing court should indulge it." *Id.* We think the inference that, in Evans's experience, drug dealers keep evidence at their homes is obvious from the affidavit's face. The affidavit identified Evans's experience and tied his belief that Reed's home would contain drug proceeds or drug records to that experience. A more express statement would surely have triggered *Leon*—as we already held in *Schultz*. *See* 14 F.3d at 1098. And making the omission of a such a statement dispositive would create a "magic words" requirement that our cases have rejected. *See United States v. Christian*, 925 F.3d 305, 310 (6th Cir. 2019) (en banc) (quoting *Allen*, 211 F.3d at 975).

\* \* \*

To reiterate: We do not resolve whether the police had probable cause to search Reed's home. And the fact that an affidavit exceeds *Leon*'s low "bare-bones" bar does not make it a model of good police work. *Cf. Ardd*, 911 F.3d at 351. But Detective Evans's affidavits in this case clear that bar. So the district court should not have suppressed the evidence obtained from Reed's home or the statements that Reed made after the search. We thus reverse the district court's suppression order and remand for further proceedings consistent with this opinion.

—————————

**DISSENT**

—————————

CLAY, Circuit Judge, dissenting. The majority opinion attempts to functionally dispense with the probable cause requirement for searches of an individual's residence under the guise of a law enforcement officer's "good faith" reliance on a facially invalid search warrant. The opinion begins by erroneously placing equal value on two competing principles—that probable cause to arrest an individual is not sufficient to search the individual's home, and that officers can use "common sense" in determining where an individual will hide evidence of an alleged crime—as a means of justifying the search of an individual's home. Despite some inconsistencies, the weight of our precedent affirms that law enforcement cannot search the residence of an individual suspected of criminal activity in the absence of probable cause for the search, even where the suspect is a "known drug dealer," if the affidavit supporting the warrant does not demonstrate a nexus between the individual's residence and the alleged criminal activity. And in the context of the good faith exception, the affidavit must still demonstrate a minimally sufficient nexus to the residence in order for an officer to reasonably rely on the warrant in executing the search.

In mischaracterizing the affidavit at issue as presenting a close case regarding whether there was probable cause to search the residence,[1] the majority makes its conclusion that the good faith exception applies seem all but predetermined. But in fact, the affidavit failed to provide the requisite probable cause to search Defendant Terry Reed's residence at Kate Bond Road because it included no information indicating that there was a fair probability that evidence of drug trafficking would be found in the home. Given that the clear lack of a nexus between the criminal activity and the residence rendered reliance on the warrant objectively unreasonable, the good faith exception is inapplicable. *See United States v. Brown*, 828 F.3d 375, 385–86 (6th Cir.

—————————

[1]At the end of the opinion, the majority claims to not resolve the question of whether the affidavit supporting the warrant provided probable cause to search the residence. But the majority's lengthy discussion of what is necessary to establish a sufficient nexus between a drug trafficker's home and alleged drug activity in a search warrant for probable cause all but leads to the conclusion that the majority is arguing that the affidavit supporting the warrant did provide probable cause to search Reed's home.

2016) ("Although the good-faith standard is less demanding than the standard for probable cause, the affidavit still must draw some plausible connection to the residence.").

In creating the good faith exception in *United States v. Leon*, the Supreme Court noted that the exception was "not intended to signal [the Supreme Court's] unwillingness strictly to enforce the requirements of the Fourth Amendment," and the Supreme Court went as far as to say that it "d[id] not believe that it will have this effect." 468 U.S. 897, 924 (1984). The application of the good faith exception is not intended to have the untoward consequence of disincentivizing courts from enforcing the probable cause requirement, but its use in the instant case virtually would allow courts to rubber stamp warrants based on affidavits containing no nexus to the place being searched. Because the majority opinion impermissibly applies the good faith exception, I respectfully dissent and would affirm the district court's suppression of the evidence obtained pursuant to the warrant at issue.

**I.      Application of the Good Faith Exception to the Affidavit in Support of the Warrant to Search Reed's Kate Bond Road Residence**

Because the government on appeal does not contest the district court's finding that the search warrant for Reed's home at the Kate Bond Road residence was not supported by probable cause, the present case turns on whether the good faith exception applies to preclude invocation of the exclusionary rule. Generally, "[w]hen evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Brown*, 828 F.3d at 385 (quoting *Illinois v. Krull*, 480 U.S. 340, 347 (1987)). In *Leon*, the Supreme Court created the good faith exception to the exclusionary rule, under which evidence obtained pursuant to an unconstitutional search or seizure is not excluded if the officer acted in "objectively reasonable reliance on a subsequently invalidated search warrant." 468 U.S. at 922. The animating principle behind the good faith exception is that "the exclusionary rule is designed to deter police misconduct," and "when the offending officers act[] in the objectively reasonable belief that their conduct did not violate the Fourth Amendment" the exclusionary rule does not serve the same deterrent effect. *Id.* at 916, 918.

We have applied the good faith exception "in cases where we determined that the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause." *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004). This is because the inquiry under the good faith exception is focused on "whether the executing officers 'reasonably believed that the warrant was properly issued, *not* whether probable cause existed in fact.'" *United States v. Kinison*, 710 F.3d 678, 685 (6th Cir. 2013) (quoting *United States v. Laughton*, 409 F.3d 744, 752 (6th Cir. 2005)).

But we have noted that the good faith exception is inapplicable "where the affidavit was nothing more than a 'bare bones' affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."[2] *United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006). An affidavit is "bare bones" if it does not "state more than 'suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge'" or "make 'some connection' between the illegal activity and the place to be searched." *United States v. Ward*, 967 F.3d 550, 554 (6th Cir. 2020) (quoting *United States v. Christian*, 925 F.3d 305, 312–13 (6th Cir. 2019) (en banc)). In "review[ing] a warrant application for indicia of probable cause," we "examin[e] the totality of the circumstances" and "consider both the facts outlined in the affidavit and the reasonable inferences permissibly drawn from those facts." *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018) (quoting *United States v. White*, 874 F.3d 490, 502 (6th Cir. 2017)).

It is true that we have not clearly stated "the quantum of evidence needed to connect drug trafficking by an individual to a probability that evidence will be found at the individual's residence" for purposes of establishing probable cause or applying the good faith exception.

---

[2]In its discussion of the good faith exception, the majority opinion emphasizes the fact that the present warrant was issued by a state court judge, on whose probable cause determination an officer should be expected to defer. But this does not mean that in our review of the officer's reliance on the warrant we need to abdicate altogether to the judge's probable cause determination. *See Leon*, 468 U.S. at 914 (noting that, while courts "accord[] 'great deference' to a magistrate's determination" of probable cause, "[d]eference to the magistrate . . . is not boundless").

*United States v. Ardd*, 911 F.3d 348, 351 (6th Cir. 2018). *Compare United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) (indicating that it is reasonable to "infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking"), *with United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005) (But "the allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence."). We have even made inconsistent statements within a single opinion regarding the evidence needed to infer that an individual has evidence of drug activity in his or her home. For example, in *McCoy*, we stated that "[t]o infer permissibly that a drug-dealer's home may contain contraband, the warrant application must connect the drug-dealing activity and the residence," which typically would "require some 'facts showing that the residence had been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence.'" 905 F.3d at 417 (quoting *Brown*, 828 F.3d at 383). But we later noted that "facts showing that the defendant's residence had been used in drug trafficking are not always necessary for application of the inference that drug contraband will be found in the drug dealer's home," particularly if there is reliable evidence of continual and ongoing drug trafficking operations or "based on the defendant's record of past drug convictions coupled with recent, reliable evidence of drug activity." *Id.* at 417–18. Despite these inconsistencies, barring the exceptional case, we still require "some connection" in the affidavit "between the criminal activity at issue and the place to be searched" before applying the good faith exception. *White*, 874 F.3d at 497 (internal quotations omitted).

In the present case, the affidavit supporting the warrant to search Reed's residence at Kate Bond Road did not include any information connecting the residence to alleged drug activity, other than a conclusory statement that Detective Evans *believed* "Terry Reed is in possession of the following described property, to wit: Bank/Financial Records, U.S. Currency, Drug Records, and Proceeds from Drug Funds contrary to the laws of Tennessee." (R. 28-1, Reed Search Warrants at PageID # 41.) In contrast to *Ardd*, in which the officer's affidavit "confirmed that, in his experience, drug dealers often keep evidence of their criminal activity at their homes," 911 F.3d at 352, in the instant case Detective Evans only generally referenced his training in drug investigation and participation "in numerous drug arrests, drug seizures, and drug investigations." (R. 28-1, Reed Search Warrants at PageID # 41.) Any "common-sense"

inference by Evans that Reed had contraband in his home needed to be supported by some reference in the affidavit to drug activity at the residence; otherwise, it was not "obvious" that the home would contain such evidence. *See White*, 874 F.3d at 500 (finding that the affidavit provided a "minimal connection between White's drug trafficking and his residence" in which the affidavit "recount[ed] a drug sale on the premises" of the residence). And the few other mentions of his residence in the affidavit were that a confidential informant "confirmed that Dominique Johnson is Terry [R]eed's girlfriend and that they live together," "Dominique Johnson has active [] utilities in her name for [] Kate Bond," and Detective Evans and Detective Gross "observed Dominique Johnson and Terry Reed leave their residence together driving a brown Cadillac Escalade," none of which tie the residence to any drug trafficking activity. (R. 28-1, Reed Search Warrants at PageID # 41.) As a result, the affidavit did not provide "a plausible connection to the residence." *Brown*, 828 F.3d at 385–86 (finding that the affidavit was lacking in indicia of probable cause to search the defendant's residence because "[s]ave for a passing reference to Brown's car registration, the affidavit [wa]s devoid of facts connecting the residence to the alleged drug dealing activity").

Despite the lack of residential nexus, the majority erroneously concludes that the district court's order granting Reed's motion to suppress should be reversed based on the application of the good faith exception because the affidavit indicated that Reed participated in continual and ongoing drug activity and due to Reed's status as a known drug dealer. But the majority exaggerates what information was included in the affidavit to allow a reasonable inference of the necessary residential nexus.[3] For one, the affidavit supporting the warrant to search Reed's residence does not demonstrate continual and ongoing drug activity as it only mentioned two controlled buys by a confidential informant,[4] none of which took place at his Kate Bond Road

---

[3]We should also be cautious of placing additional weight on a finding that a known drug dealer is participating in "continual and ongoing drug activity" for purposes of applying the good faith exception. It is inherent in the term "known drug dealer" that the individual is presently participating in drug trafficking, and such a finding does not warrant the application of the good faith exception where the affidavit does not include a minimally sufficient nexus between the residence to be searched and evidence of drug activity.

[4]The majority misreads *McCoy* to suggest that "recent, reliable evidence of drug activity" is enough to establish continual and ongoing drug transactions that provide a reasonable inference that a drug trafficker has evidence of drug activity in his or her home. (Majority Op. at 12.) But, in fact, we stated in *McCoy* that under a "continual-and-ongoing-operations theory" we "have found a nexus between drug activity and a defendant's residence based on the defendant's record of past drug convictions coupled with recent, reliable evidence of drug

residence.  (R. 28-1, Reed Search Warrants at PageID # 41 ("A Memphis, Tennessee Police Department, Confidential Informant (CI) has observed Terry Reed selling marijuana from [] Jackson Avenue and [] Orchi, in Memphis TN.").)  Though the affidavit noted that the controlled buys occurred recently—within 20 days and 5 days, respectively, of when the warrant was executed—it failed to include how much marijuana Reed allegedly sold to the confidential informant, cutting against a finding that his drug activities were continual and ongoing.  *Cf. Ardd*, 911 F.3d at 352 (noting that the defendant "repeatedly told [the affiant] that he wanted distribution quantities of cocaine and that he was ready to buy over 250 grams of cocaine from [the affiant]").

While the district court found that Reed was a known drug dealer, the affidavit for the residence did not mention that Reed had previously been convicted of any drug-related offenses.  Additionally, it neither said nor independently corroborated that Reed was a known drug dealer.  *See United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (finding that an inference that a person arrested "outside his home with drugs on his person" would have drugs and drug paraphernalia in his residence was only permissible where there was an additional fact to support this inference, i.e., "the independently corroborated fact that the defendants were known drug dealers at the time the police sought to search their homes").  Given the above, the affidavit was "lacking in indicia of probable cause" such that the good faith exception does not apply.  *See Ward*, 967 F.3d at 555 (finding that the good faith exception did not apply to an affidavit that "ha[d] neither a tip alleging that Ward sold drugs from his home, a controlled buy at Ward's residence, evidence of numerous drug convictions, nor the prompt action by law enforcement").

## II.  Government's Forfeiture of Argument that the Good Faith Exception Applies Based on All Three Affidavits Presented to the Magistrate

The majority also incorrectly assumes that we can look to the two other affidavits for warrants to search a residence on Orchi Road and the business "OK Tire" on Jackson Avenue, both of which were presented to the magistrate at the same time as the warrant for the Kate Bond Road residence, in determining whether the good faith exception should apply to prevent

---

activity."  *McCoy*, 905 F.3d at 418.  Without the addition of past drug convictions, as indicated in *McCoy*, continuous and ongoing drug transactions include the "defendant's having engaged in regular or repetitive drug sales involving a large quantity of drugs."  *Id.*

exclusion of the evidence obtained pursuant to the warrant at issue. Despite the warrants being presented contemporaneously, there is no indication that the magistrate considered the other two affidavits when issuing the warrant to search the Kate Bond Road residence. In fact, the magistrate signed the warrant to search the Kate Bond Road residence before signing the other two warrants, meaning that the magistrate likely reviewed the Kate Bond Road warrant and made the probable cause determination before reviewing the other affidavits. If this was the case, then the information from the other two affidavits was not "revealed to the issuing magistrate." *Frazier*, 423 F.3d at 535.

We also held in *Laughton* that "a determination of good-faith reliance, like a determination of probable cause, must be bound by the four corners of the affidavit." 409 F.3d at 751. But the majority is correct that in *Frazier* we made an exception to *Laughton*, allowing "a court reviewing an officer's good faith under *Leon* [to] look beyond the four corners of the warrant affidavit to information that was known to the officer and revealed to the issuing magistrate." 423 F.3d at 535. We reasoned that *Laughton* was distinguishable from *Frazier* because the affiant told the magistrate that a confidential informant "had recorded Frazier's participation in two drug deals" and "included and swor[e] to this information in five related warrant affidavits presented contemporaneously to the magistrate judge."**5** *Id.*; *see also Hython*, 443 F.3d at 488 ("The exception delineated in *Frazier* is in accord with the guiding principle of the *Laughton* rule, that 'the test for good faith reliance, because it is an objective one, does not permit consideration of the executing officer's state of mind.'" (quoting *Laughton*, 409 F.3d at 750)).

Nonetheless, the government has likely forfeited any argument that the other two affidavits support the application of the good faith exception to the warrant at issue on appeal.**6**

---

**5**It is worth noting that, in later cases, we have not consistently made this distinction and have sometimes simply indicated that the court is "bound by the four corners of the affidavit" in determining whether an affidavit is "bare bones" and not within the good faith exception. *United States v. Rose*, 714 F.3d 362, 367 (6th Cir. 2013); *see also Christian*, 925 F.3d at 314 (en banc) (Thapar, J., concurring) (noting that "because of our precedent, we must ignore critical evidence of which the officers undisputedly knew and isolate the good-faith analysis to the four corners of the affidavit").

**6**Reed presents this contention in the brief as requiring the application of plain error to the government's challenge to the motion to suppress on appellate review. However, plain error applies when one of the parties fails to raise a claim, as opposed to an individual argument, before the district court. *See United States v. Bostic*,

Both before the magistrate judge and the district court the government argued that there was probable cause to support the warrant and, in the alternative, the good faith exception applied based solely on the affidavit for the warrant to search Reed's Kate Bond Road residence.  (*See* R. 29, Gov't Resp. to Mot. to Suppress at PageID # 67 ("[T]he affidavit detailed the detective's[] efforts to investigate and corroborate the confidential informant's information.").)  We have previously indicated that "[w]hen a party neglects to advance a particular issue in the lower court, we consider that issue forfeited on appeal." *Greer v. United States*, 938 F.3d 766, 770 (6th Cir. 2019) (finding that the government forfeited its arguments raised for the first time on appeal that the defendant had waived his argument that he did not qualify as an Armed Career Criminal based on his stipulation in the plea agreement to the contrary and the plea's appellate waiver); *see also Hunter v. United States*, 160 F.3d 1109, 1113 (6th Cir. 1998) ("But, as with any other argument, the government can forfeit a waiver argument by failing to raise it in a timely fashion.").  Given that the government failed to make this argument below, and the government has not explained why this constitutes an "exceptional case" warranting an excusal of the forfeiture, the government has forfeited the argument on appeal.  *Cradler v. United States*, 891 F.3d 659, 666 (6th Cir. 2018).

In finding that forfeiture does not apply to this argument, the majority cites to case law "recogniz[ing] a distinction between failing to properly raise a claim before the district court and failing to make an argument in support of that claim."  *United States v. Hamm*, 952 F.3d 728, 742 (6th Cir. 2020) (quoting *Leonor v. Provident Life & Accident Co.*, 790 F.3d 682, 687 (6th Cir. 2015)); *see also Mills v. Barnard*, 869 F.3d 473, 483 (6th Cir. 2017) ("An argument is not forfeited on appeal because a particular authority or strain of the argument was not raised below, as long as the issue itself was properly raised.").  In these cases, we found that the party against whom forfeiture was being asserted could make new legal arguments on appeal not raised below so long as the claim was properly preserved.  *See Hamm*, 952 F.3d at 742 (finding that the

---

371 F.3d 865, 870 (6th Cir. 2004) (noting that the government's challenge on appeal opposing the downward departure from the Guidelines is reviewed for plain error because "the government failed to object adequately in the district court to Bostic's motion for a downward departure").  Because the government raised the issue of the applicability of the good faith exception below, the claim can be reviewed *de novo*.  But, as indicated above, the government failed to raise any argument as to the applicability of the good faith exception based on the other two affidavits being before the magistrate; therefore, that argument is forfeited on appeal.

defendants had not forfeited their argument on appeal that "*Pinkerton* does not apply to the sentencing enhancement for Counts 2 and 3" because they "have been consistent about their objection" and "have consistently argued that *Pinkerton* liability is inapplicable"); *Mills*, 869 F.3d at 483 (finding that the defendant could rely on a case on appeal that was not cited to the district court in support of his preserved contention that there was no probable cause for his prosecution).  In contrast, in the instant case, the government failed to present facts from the other two affidavits in support of their contention that the good faith exception should prevent the exclusion of evidence obtained pursuant to the Kate Bond Road residence search warrant. *See United States v. Archibald*, 589 F.3d 289, 295–96 (6th Cir. 2009) ("The purpose behind the waiver rule is to force the parties to marshal all of the relevant facts and issues before the district court, the tribunal authorized to make findings of fact.").  Because the government should have made this factual argument to the district court to consider in the first instance, the argument is forfeited on appeal, and the majority has erred by considering facts from the OK Tire and Orchi Road affidavits in their analysis.

Notwithstanding the forfeiture of this argument on appeal, even considering the information from the other two warrants, the good faith exception should not apply to prevent suppression of the warrant at issue because the other two affidavits do not include any information specifically linking Reed's alleged drug trafficking activity to his residence.  Neither of these affidavits provides any information demonstrating that Reed was engaging in drug transactions at the Kate Bond Road residence or indicating that evidence of drug trafficking would be found at the residence.  The Orchi Road dwelling affidavit does discuss a brown Cadillac Escalade, which was similarly mentioned in the Kate Bond Road residence affidavit, noting that "[w]ithin the past 5 days, your affiant has observed Terry Reed driving a brown Cadillac Escalade with TN tags []," "Reed parks his vehicle at 3792 Orchi," and "[y]our affiant observed Reed make hand to hand transactions by walking outside the house to people that would pull up in front of the residence."  (R. 28-1, Reed Search Warrants at PageID # 47.) However, the affiant did not indicate that Reed was seen driving to the Kate Bond Road residence following these transactions, identify the brown Cadillac Escalade as the same car mentioned in the Kate Bond Road residence affidavit, or discuss whether Reed placed the items transferred in these transactions into the car to be stored at the Kate Bond Road residence.

Accordingly, these affidavits still do not provide a minimally sufficient nexus to the Kate Bond Road residence to justify application of the good faith exception.**7**

For the foregoing reasons, I respectfully dissent and would affirm the district court's order granting Reed's motion to suppress the evidence obtained from the officers' search of the Kate Bond Road residence.

---

**7**The affidavit for the Orchi dwelling does state that "Terry Reed has 4 felony and 2 misdemeanor convictions for narcotics," although it does not specify whether the convictions are for possession or distribution. (R. 28-1, Reed Search Warrants at PageID # 47.) *McCoy* did indicate that "the defendant's record of past drug convictions coupled with recent, reliable evidence of drug activity" could be enough for a reasonable inference that the defendant has evidence of drug activity at their home. 905 F.3d at 418. But this statement amounts to dicta—in *McCoy* we ultimately determined that the good faith exception applied because of the circumstances of the defendant's arrest and the information from the confidential informant providing some connection between drug activity and the residence. *Id.* at 420; *see also Ward*, 967 F.3d at 556 (distinguishing *McCoy* based on the fact that "the defendant's house was [] searched only after he was arrested in possession of large amounts of marijuana and cash, and a confidential informant relayed that the defendant and others sold marijuana from two stores, that the defendant and others involved in the drug distribution lived together, and that the informant saw guns and marijuana at their residence").