RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0144p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

COREY NEAL,

*Defendant-Appellant*.

> No. 23-5299

─────────────────

Appeal from the United States District Court for the Western District of Tennessee at Memphis.
No. 2:22-cr-20083-1—Jon Phipps McCalla, District Judge.

Decided and Filed:  July 1, 2024

Before:  McKEAGUE, READLER, and DAVIS, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Needum L. Germany, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.  Karen Hartridge, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

─────────────────

## OPINION

─────────────────

PER CURIAM.  With a warrant in hand, Shelby County officers searched Corey Neal's residence.  There, they discovered three firearms, resulting in a federal gun possession charge.  Neal later raised a Fourth Amendment challenge to the validity of the search.  When that effort failed, he pleaded guilty to illegally possessing the weapons.  On appeal, Neal reasserts his Fourth Amendment claim.  Finding no error in the district court's refusal to suppress the fruits of the search, we affirm.

**I.**

Detective T. Parker of the Shelby County Sheriff's Office received a tip from an experienced confidential informant, whom Parker also described as "reliable," that a man named "Rothschild" was selling large amounts of marijuana in the Memphis area. The informant also provided Parker with Rothschild's cell phone number. Law enforcement databases revealed that Rothschild's real name was Corey Neal, who resided at 873 Paradise Drive in Cordova, Tennessee. When shown a photograph, the informant confirmed that Neal was the person he knew as Rothschild.

With Neal in their sights, officers set up a controlled buy between the informant and Neal. After confirming that the informant did not possess any contraband, the officers provided him with money to purchase marijuana from Neal. The officers witnessed the resulting transaction. Minutes later, the informant met with the officers and provided them with a clear bag containing marijuana.

Additional evidence linked Neal to 873 Paradise Drive. Around the time of the controlled buy, officers observed Neal driving a 2018 Mercedes Benz sedan, which was registered to the Paradise Drive residence. The officers also witnessed Neal using a key to enter the residence both day and night.

Based on this collection of information, Parker sought a warrant to search 873 Paradise Drive for marijuana, drug paraphernalia, drug ledgers, drug proceeds, and electronic storage devices. In an affidavit supporting the warrant application, Parker relayed to a Shelby County judge what the Sheriff's Office had learned about Neal in the investigation. Parker also expressed his view, formed from his years of investigating narcotics crimes, that drug dealers often keep drugs and other trafficking evidence at their places of residence. The judge approved the search warrant for 873 Paradise Drive as well as automobiles on the premises. The resulting search unearthed three firearms and nearly 400 grams of marijuana.

Neal was indicted on two federal counts: one for possessing with the intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); and one for possessing firearms while a felon, in violation of 18 U.S.C. § 922(g)(1). Neal moved to suppress the evidence found at the Paradise Drive residence on the basis that the affidavit supporting the search warrant failed to demonstrate

probable cause justifying the search. The district court, however, denied Neal's motion. Agreeing that the warrant lacked probable cause, the district court nonetheless concluded that the good faith exception to the exclusionary rule from *United States v. Leon*, 468 U.S. 897 (1984), counseled against suppressing the fruits of the government's search. Reserving his right to appeal that ruling, Neal pleaded guilty to the second count in the indictment, with the government agreeing to dismiss the first. The district court sentenced Neal to a term of 92 months' imprisonment for the felon-in-possession violation. Neal's timely appeal followed.

## II.

With the government leaving aside the district court's probable cause determination, we turn our attention to whether *Leon*'s good faith exception justifies the search of Neal's residence.

A. The constitutional question here is a recurring one. The Fourth Amendment requires that search warrants be supported by "probable cause," bolstered by specific descriptions, given under "Oath or affirmation," as to both "the place to be searched" and the "things to be seized" in the search. U.S. CONST. amend. IV. We have long understood this language to require a probable cause nexus between the "place" and the "things" at issue. *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998); *see also United States v. Sanders*, No. 21-5945, 2024 WL 3218723, at *2 (6th Cir. June 28, 2024) (en banc). It follows that an affidavit supporting a request for a search warrant must establish a "fair probability" that the place to be searched will contain the evidence for which the officers are looking. *See United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983)).

If a search warrant fails to honor this constitutional command, what is the remedy? The Fourth Amendment is silent on the point. *See United States v. Elmore*, 18 F.4th 193, 199 (6th Cir. 2021). But the Supreme Court has weighed in by adopting the exclusionary rule as the "principal judicial remedy to deter Fourth Amendment violations." *Utah v. Strieff*, 579 U.S. 232, 237 (2016); *see also Weeks v. United States*, 232 U.S. 383, 398 (1914); *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). The rule's purpose, it bears emphasizing, is to deter police misconduct. *Davis v. United States*, 564 U.S. 229, 246 (2011). In that spirit, the rule is applied in a manner that "requires trial courts to exclude unlawfully seized evidence in a criminal trial." *Strieff*, 579 U.S.

at 237.  But a court should do so only where suppression would lead to "appreciable deterrence" of law enforcement misconduct.  *Davis*, 564 U.S. at 237 (citation omitted).

These principles drove the landmark ruling in *Leon*.  There, the Supreme Court held that judicial suppression is inappropriate when an officer conducts a search in "objectively reasonable reliance" on a warrant later deemed to be invalid.  468 U.S. at 922.  Why?  Because in that scenario, the authorizing judge—not the officer—is the blameworthy party.  And because the officer's conduct lacks any ill motive, the deterrent value of excluding evidence is minimal.  *See id.* at 911; *Davis*, 564 U.S. at 239.

Contrast that situation to one in which an officer conducts a search while lacking a good faith belief in the stated basis for seeking the warrant.  In that instance, the officer is at fault for the constitutional violation, warrant notwithstanding, making suppression an effective remedy.  *Leon*, 468 U.S. at 923.  That includes occasions where the supporting affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Id.* (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11 (1973) (Powell, J., concurring in part)).  Where an officer anchors his conduct to a so-called "bare-bones affidavit," the officer acts recklessly, rather than in good faith, and thus remains blameworthy for conducting the search.  *United States v. Reed*, 993 F.3d 441, 450 (6th Cir. 2021).

In what circumstances, then, is a warrant (along with its supporting affidavit) so deficient that it not only lacks a "probable cause nexus," but is also "bare bones"?  When the warrant lacks a "minimally sufficient nexus" between the place to be searched and the evidence of wrongdoing to be seized at that place.  *See Carpenter*, 360 F.3d at 596.  And what is a "minimally sufficient nexus"?  As a starting point, it understandably is a lower standard than the "fair probability" needed to demonstrate nexus for purposes of probable cause, *see Reed*, 993 F.3d at 447, 450–51, itself requiring only a modest climb, *see District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018).  In line with the exclusionary rule's deterrence rationale, an affidavit lacks a "minimally sufficient nexus" only where its defects would be apparent to a reasonable officer.  *United States v. White*, 874 F.3d 490, 496–97 (6th Cir. 2017); *see also Sanders*, 2024 WL 3218723, at *9 (requiring officers to have "clear notice" that the affidavit was deficient to warrant application of the exclusionary rule).  In such a case, the officer is sufficiently blameworthy to justify the suppression remedy.  *See United States v. Baker*, 976 F.3d 636, 647 (6th Cir. 2020).

Sum things up this way. A "minimally sufficient nexus" is not a high bar. All it requires is a "modicum of evidence, however slight" connecting the illegal activity and the place to be searched. *White*, 874 F.3d at 496–97 (citation omitted). We thus bestow the moniker of "bare bones" only on those affidavits that consist of no more than a hunch that evidence might be found at a location. *See United States v. Schultz*, 14 F.3d 1093, 1097–98 (6th Cir. 1994). That would be the case, for example, when an affidavit is "completely devoid" of facts relevant to the probable cause inquiry or is "so vague as to be conclusory or meaningless." *Carpenter*, 360 F.3d at 595–96; *see also Sanders*, 2024 WL 3218723, at *9 (recognizing bare bones affidavits as those that "nakedly assume or vaguely conclude, without attempting to demonstrate why, probable cause has been satisfied").

B. Did the affidavit here establish a "minimally sufficient nexus" between the items sought (marijuana, drug paraphernalia, drug ledgers, drug proceeds, and electronic storage devices) and the place to searched (873 Paradise Drive)? The district court believed it did, a conclusion we review de novo. *See United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005). And, on balance, we agree with the district court. The affidavit does more than make a naked guess that contraband might be found at the Paradise Drive residence. In particular, it fairly establishes two facts. First, that Neal was recently dealing large amounts of drugs—as evidenced by a tip from a trustworthy confidential informant and buttressed by a recent controlled buy from Neal. Second, that Neal resided at 873 Paradise Drive—based on police database searches, the fact that Neal's Mercedes was registered to that address, and surveillance showing Neal using a key to enter and exit the residence day and night.

As our en banc Court recently recognized, confirmation of those two facts, known drug dealer status and the dealer's residence, in some instances, can provide circumstantial evidence establishing probable cause to search the residence for drug trafficking evidence. *See Sanders*, 2024 WL 3218723, at *6 (surveying the holdings of every sister circuit to consider the issue). After all, decades of police work, not to mention common sense, has shown that drug dealers, by the nature of their work, often secure evidence of their crimes in their homes, creating a fair probability that evidence will be found there. *Id.* Yet this inference does not always carry the day. We have instead cabined cases in which the so-called known drug dealer inference can establish probable cause to those in which the dealer is engaged in "'continual and ongoing

operations' typically involving large amounts of drugs." *See United States v. Sheckles*, 996 F.3d 330, 342 (6th Cir. 2021) (quoting *United States v. McCoy*, 905 F.3d 409, 418 (6th Cir. 2018)). Conversely, isolated drug dealing or stale evidence of drug dealing does not suffice to establish a fair probability that drug trafficking evidence will be found in the home of the suspect. *See Sanders*, 2024 WL 3218723, at *7. The resolution of who is a "known drug dealer" engaged in "continual and ongoing operations" or what sufficient evidence of residency is, therefore, necessarily a "fact-specific" inquiry. *Sheckles*, 996 F.3d at 342.

It follows then that whether the facts alleged in a given warrant affidavit justify application of the known drug dealer inference can make for a fair point for debate. *See Reed*, 993 F.3d at 451 ("[O]ur precedent leaves unclear the amount of drug activity required to invoke this nexus principle."). But here, we need only resolve the follow-on good faith question, one that is easier to answer. We suppress evidence derived from a bare bones affidavit because the officer's reliance on such a warrant is "entirely unreasonable," *see Leon*, 468 U.S. at 923, and thus indicative of the officer's recklessness, *see Davis*, 564 U.S. at 238–39. And "entirely unreasonable," in turn, is a low bar. After all, where it is simply debatable whether probable cause exists, an officer is justified in relying on a judicial finding of probable cause. *See Reed*, 993 F.3d at 452. That is why "[c]ase after case finds good-faith reliance" where officers "infer a connection between evidence of drug trafficking and a drug dealer's home." *United States v. Ardd*, 911 F.3d 348, 351 (6th Cir. 2018).

Here, the affidavit at issue contained the necessary "minimally sufficient nexus." *See Reed*, 993 F.3d at 451. It established recent drug trafficking by Neal along with evidence of Neal's residency. And it also described Parker's experience with drug dealers keeping evidence of their dealing at their residences, yet "another reason" supporting application of "*Leon*'s exception." *Id.* at 452. At day's end, the affidavit is not so bare bones as to necessitate application of the exclusionary rule.

Seeing things otherwise, Neal directs us to *United States v. Grant*, where we refused to apply the good faith exception as to the fruits of various faulty warrants. No. 21-3686, 2023 WL 119399, at *5 (6th Cir. Jan. 6, 2023). But *Grant* is unpublished and thus nonbinding. Moreover, its "likelihood" standard is in tension with earlier published cases. *Compare Grant*, 2023 WL 119399, at *5 (suggesting that a "minimally sufficient nexus" requires evidence that the place to

be searched is a "likely location for records of drug trafficking"), *with United States v. Laughton*, 409 F.3d 744, 749 (6th Cir. 2005) (requiring only "some modicum of evidence, however slight, to connect the criminal activity . . . to the place to be searched").

Beyond that, *Grant* is distinguishable on its facts. There, the warrant affidavit established that Grant was trafficking in drugs but failed to establish that any drug-related or other suspicious activity had taken place at the locations to be searched. *Grant*, 2023 WL 119399, at *1. At most, the affidavit noted only that Grant parked near and had been observed walking away from those locations. *Id.* at *5. Compare that to the more fulsome description in the affidavit here: a police database showing that Neal lived at 873 Paradise Drive, officers seeing Neal repeatedly entering the residence with a key, and Neal's car being registered at the address. In fact, *Grant* highlighted the absence of these latter two items in the supporting affidavit as a reason not to apply the good faith rule. *Id.* (distinguishing *United States v. Washington*, 380 F.3d 236 (6th Cir. 2004)).

Next, Neal asserts that the warrant affidavit needed to contain information that drugs were sold at 873 Paradise Drive. But there is no rule that a search warrant's validity turns on its inclusion of direct evidence of drug trafficking at the place to be searched. Indeed, our en banc Court held just the opposite with respect to the more demanding probable cause inquiry, recognizing that "we have never required prior, actual observation of all the items listed in a search warrant to establish a probable cause nexus." *See Sanders*, 2024 WL 3218723, at *7 (cleaned up) ("[C]ircumstantial evidence that contraband might be found at the place to be searched suffices."). This holding followed decades of precedent rejecting Neal's proposition, including in the good faith exception context. *See, e.g.*, *White*, 874 F.3d at 501. Here too, then, Neal fails to demonstrate that the district court erred in refusing to suppress what the officers found at the Paradise residence.

\* \* \* \* \*

We affirm the judgment of the district court.