NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0353n.06

No. 24-5905

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| JEFFREY L. SCALES, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

Before: BATCHELDER, GIBBONS, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Based on a tip from a confidential informant and evidence discovered during a subsequent traffic stop, police obtained a warrant to search an apartment in which Jeffrey Scales and Keyasia Davis resided. The search of the apartment revealed heroin, marijuana, and other evidence related to drug trafficking.

Scales was then indicted on charges related to drug trafficking and possession of a firearm. He moved to suppress the evidence seized at the apartment. The district court denied his motion, concluding that officers were entitled to rely on the warrant in good faith. Scales now appeals. We affirm the district court's denial of Scales's motion to suppress.

**BACKGROUND**

I.      **Factual Background**

This case presents the question whether the warrant affidavit demonstrates a sufficient nexus—either for probable cause or the good-faith exception—to search the apartment in which

Scales resided in Knoxville, Tennessee. So, the contents of the affidavit submitted by Detective John Sharp are at the center of the appeal. The warrant affidavit contained the following details:

*Confidential informant.* Detective Sharp explained that for a year and a half, investigators with the Knox County Sherriff's Office had been investigating a drug trafficking organization they suspected was being run by an individual named Martez Wilson. Scales and Davis were both "known subjects" in the ongoing investigation. Search Warrant Aff., R. 138-1, PageID 369. Around a month before Detective Sharp filed his affidavit, investigators had spoken with a confidential informant who had an "intimate relationship" with Wilson. *Id.* That informant told investigators that Wilson, along with Scales and Davis, was operating "a large drug organization which included the transport of significant quantities of heroin and bulk cash between Knoxville, Tennessee, and the Detroit, Michigan area." *Id.* The informant also stated that when Wilson, Scales, and Davis were in Knoxville, they stored cash and "illegal[] drugs such as heroin" in an apartment where both Davis and Scales lived. *Id.* That apartment was rented by a woman named Emily.

Detective Sharp further explained that the informant had "sent investigators a picture of 'Emily.'" *Id.* Using the picture of Emily, investigators consulted law enforcement databases and "public information services" and were able to piece together that the confidential informant was referring to Emily Long, who rented an apartment on Aldergate Way in Knoxville.[1] *Id.*

*Traffic stops.* Detective Sharp also summarized the traffic stops that had occurred the same day that he filed the search warrant application. About a month after investigators spoke to the

---

[1] From the search warrant, it is unclear whether the confidential informant specified the address of Long's apartment. At argument, counsel for the government clarified that the confidential informant did not provide investigators with the precise address of the apartment; rather, investigators pieced together the address using the informant's information.

informant, officers with the Knox County Sheriff's Office were surveilling a shopping mall parking lot in Knoxville when they observed what they suspected to be a drug transaction between the occupants of a pickup truck and a Jeep. After both cars drove away, the officers followed the pickup truck and conducted a traffic stop. The truck's occupant confessed to the officers that he had been in the parking lot to purchase drugs from his dealer, who was in the Jeep.

Following up on that information, other officers located and stopped the Jeep. Inside, the officers found four people—Scales, Davis, and two others. After a K-9 unit signaled that drugs were inside, the officers searched the Jeep and found "a large amount of US Currency" and "2 handguns." *Id.* They then searched the vehicle's occupants. When the officers searched Davis, they found six ounces of heroin concealed in her pants, "individually packaged in small user amount baggys inside a larger bag." *Id.* Detective Sharp added: "Also recovered from [Davis] was a key to [the Aldergate Way apartment], which is the apartment investigators are seeking to search."[2] *Id.*

*Experience.* Detective Sharp summarized his personal experience with drug trafficking investigations and explained that, in his experience, drug traffickers will often hide contraband and "proceeds of drug sales" in places including their "residences" and "locations which they control but which are titled in the names of others." *Id.* at PageID 370–73.

A Tennessee state court judge signed the search warrant, and law enforcement executed the warrant that night. Inside the apartment, law enforcement found heroin, marijuana, drug paraphernalia, cash, cell phones, and several firearms.

---

[2] Detective Sharp did not explain how investigators knew that the key recovered from Davis was in fact a key to the Aldergate Way apartment. In the district court, Scales argued that officers had no way of knowing that the key belonged to the apartment and that the search warrant affidavit accordingly contained false information. Scales does not make any argument as to the key on appeal.

II.     **Procedural History**

A few months after the search of the apartment, a grand jury indicted Scales for conspiring to distribute at least 400 grams of fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A); possessing with intent to distribute at least 400 grams of fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A); possessing a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A), (2); and being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

Scales filed a motion to suppress the evidence seized at the apartment. A magistrate judge issued a report and recommendation concluding that the search warrant was not supported by probable cause, but that the good-faith exception to the exclusionary rule applied.

Scales filed objections to the report and recommendation, and the government filed a response. In that response, the government stated: "While the United States believes that the search warrant for the Aldergate Way property is supported by probable cause, we ultimately do not object to the R&R, as we certainly agree any apparent deficiency in the search warrant is cured through good faith." United States' Resp. to Defs.' Objections, R. 353, PageID 1710.

The district court agreed with the magistrate judge and issued an opinion denying Scales's motion to suppress. The district court noted that because no party had objected to the magistrate judge's conclusion that the warrant was issued without probable cause, it had no reason to address that issue and would instead address only whether the officers were entitled to rely on the warrant in good faith. The district court held that the good-faith exception applied.

Scales then pleaded guilty to conspiracy to distribute fentanyl and possession of a firearm in furtherance of drug trafficking. As part of the plea deal, the government dismissed the remaining

charges. Scales preserved his right to appeal the district court's denial of his motion to suppress. In this appeal, he exercises that right.

## ANALYSIS

In an appeal of a denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law de novo. *See United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009). Whether there was probable cause and "whether the good-faith exception to the exclusionary rule applies" are legal conclusions, so we review them de novo. *United States v. McCoy*, 905 F.3d 409, 415 (6th Cir. 2018); *see also United States v. Brown*, 732 F.3d 569, 572 (6th Cir. 2013). We must view the evidence in the "light most likely to support the decision of the district court." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).

"It is a basic principle of the Fourth Amendment that for a search warrant to issue there must be probable cause." *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005). "An issuing judge may find probable cause to issue a search warrant when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008) (quoting *Laughton*, 409 F.3d at 747); *see also United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024) (en banc). For there to be probable cause, the circumstances must indicate a "nexus between the place to be searched and the evidence sought"— that is, "a substantial basis" for concluding that evidence of illegal activity will be found in a particular place. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (citations omitted).

Even if a court determines that a search warrant was not supported by probable cause, that "does not always require suppression of reliable evidence" seized based on the warrant. *McCoy*, 905 F.3d at 415. Under the good-faith exception to the exclusionary rule, courts will not suppress

evidence that officers obtained in "objectively reasonable reliance" on a search warrant, irrespective of whether the warrant is "subsequently invalidated." *United States v. Leon*, 468 U.S. 897, 922 (1984). The showing required to demonstrate that an officer's reliance was in good faith is "less demanding" than the "threshold required to prove the existence of probable cause." *Frazier*, 423 F.3d at 536 (citation omitted).

Still, the good-faith exception to the exclusionary rule is "not boundless." *United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998). The Supreme Court has recognized several circumstances that might justify suppression because they indicate that officers could not have reasonably relied on a warrant in good faith, including when the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (citation omitted). "Affidavits that are 'so lacking in indicia of probable cause' have come to be known as 'bare bones' affidavits." *Laughton*, 409 F.3d at 748 (citation omitted). When an officer relies on such a bare bones affidavit, the officer "does not act in objectively reasonable good faith." *Sanders*, 106 F.4th at 468. A warrant is so deficient that it is "bare bones" when it lacks a "'minimally sufficient nexus' between the place to be searched and the evidence of wrongdoing to be seized at that place." *United States v. Neal*, 106 F.4th 568, 572 (6th Cir. 2024) (per curiam) (quoting *Carpenter*, 360 F.3d at 596). That is not a high bar—all that is required is a "modicum of evidence, however slight," connecting the place to be searched and the illegal activity. *See id.* (citation omitted).

On appeal, Scales argues that the district court erred in denying his motion to suppress because the officers were not entitled to rely on the warrant in good faith. The government argues both that the officers were entitled to rely on the warrant in good faith and that the warrant was in fact supported by probable cause. We hold that the government has waived its probable cause

argument through its conduct in the district court, so we do not address the issue. We agree with the government, however, that the officers were entitled to rely on the warrant in good faith. We accordingly affirm the district court.

## I.       Waiver of Probable Cause

We may not address the government's probable cause argument because the government has waived the issue. Waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)); *see also Walker v. United States*, 134 F.4th 437, 440 (6th Cir. 2025). Generally, a litigant waives an argument by "initially raising" the argument and then "explicitly abandoning it later." *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022).

Before the district court, the government did just that. After the magistrate judge issued its report and recommendation concluding that the search warrant was not supported by probable cause but that the officers were nonetheless entitled to rely on the warrant in good faith, Scales filed objections to the magistrate judge's good-faith analysis. The government filed a response to Scales's objections. In that response, the government stated: "While the United States believes that the search warrant for the Aldergate Way property is supported by probable cause, we ultimately do not object to the R&R . . . ." United States' Resp. to Defs.' Objections, R. 353, PageID 1710. The government, in other words, expressly stated that it was aware of its probable cause argument, but had affirmatively decided to abandon the issue. That is classic waiver.[3] Indeed, the district

---

[3] The government's course of conduct here also implicates waiver of a different variety. We have long held that, so long as a magistrate judge puts the parties on notice that failure to object to an issue addressed in a report and recommendation waives the issue, "a party shall file objections with the district court or else waive [the] right to appeal." *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981); *see also* Fed. R. Crim. P. 59(b)(2). Here, the magistrate judge informed the parties regarding the need to file objections, and the government nevertheless did not file an objection to the magistrate judge's probable cause analysis. Because we hold that the

court and Scales both appear to have understood the government to have waived its probable cause argument. In its opinion denying Scales's motion to suppress, the district court noted that because neither party had objected to the magistrate judge's probable cause analysis, it did not need to address the issue. And Scales did not address probable cause in his opening brief.

At oral argument, the government resisted the notion that it had waived its probable cause argument by informing the district court that it did not intend to pursue it. Counsel for the government argued that, for the government to have waived probable cause, it would have needed not only to state that it was abandoning its probable cause argument, but also to have affirmatively conceded that its probable cause argument "lack[ed] merit." Oral Arg. at 15:01–15:14. In other words, in the government's view, there is a distinction between conceding that an argument is a loser, which is waiver, and stating an intention not to pursue an argument further, which is not.

The government is mistaken. A party need not concede the merits of an argument to waive it. Rather, as we have repeatedly held, a party's statement that it is aware of an argument but has decided to abandon it is sufficient. *See, e.g.*, *Bannister*, 49 F.4th at 1011 (holding that a party waived an issue where it stated in its reply brief that it "d[id] not argue" that the district court had erred with respect to the issue); *Walker*, 134 F.4th at 440–41 (explaining that an indication that a party is aware of an argument and chooses not to make it constitutes waiver). Because the government made such a statement with respect to its probable cause argument here, the government has waived the issue. We accordingly may not consider it. *Walker*, 134 F.4th at 440.

---

government has waived its probable cause argument by intentionally abandoning it, however, we need not address whether the government's conduct was also waiver under Federal Rule of Criminal Procedure 59(b)(2).

## II.    Good-Faith Exception

The government's waiver of probable cause is of no moment, however, because we reject Scales's arguments regarding the good-faith exception to the exclusionary rule and affirm the denial of Scales's motion to suppress.

Scales argues that the good-faith exception to the exclusionary rule does not apply here because the search warrant affidavit was a bare bones affidavit—that is, it was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (citation omitted). As explained, for the good-faith exception to bar suppression, a search warrant must provide a "minimally sufficient nexus" connecting the place to be searched and the evidence to be seized at that place. *Neal*, 106 F.4th at 572 (quoting *Carpenter*, 360 F.3d at 596). Scales contends that the search warrant lacked such a nexus.

We disagree. Here, the warrant affidavit included several pieces of information that, together, provided a minimally sufficient nexus between evidence of drug trafficking and the apartment. For starters, the affidavit detailed the confidential informant's tip that Scales, Davis, and Wilson were engaged in a drug trafficking conspiracy; that Scales and Davis lived in an apartment in Knoxville that was rented by Emily; and that Scales, Davis, and Wilson stored drugs and cash in the apartment. From this information and the photo of Emily provided by the informant, the investigators were able to identify Emily and her apartment. The tip that Scales was storing evidence of drug trafficking in his home is highly relevant to the good-faith inquiry. *See McCoy*, 905 F.3d at 417 (noting that "a link between [a] drug dealer's activities and his home that would be insufficient to establish probable cause may suffice to establish good-faith reliance on the warrant"); *United States v. Ardd*, 911 F.3d 348, 351 (6th Cir. 2018) (reasoning that "it is not

entirely unreasonable for an officer to infer a connection between evidence of drug trafficking and a drug dealer's home").

Further, the affidavit also summarized the traffic stop that had occurred the same day that Detective Sharp filed the warrant application. Detective Sharp explained that Scales and Davis had been caught in possession of both evidence of drug trafficking and a key to the apartment. The discovery that Scales and Davis appeared to be—as the confidential informant had stated—trafficking drugs, and were in possession of a key to the same apartment that investigators had identified using the informant's information, corroborated the informant's tip. *See United States v. White*, 874 F.3d 490, 497–98 (6th Cir. 2017) (holding that the good-faith exception applied because, among other things, a confidential informant linked the defendant to a residence and officers then "corroborat[ed] key components of the informant's tip").

Finally, in addition to providing details regarding the information investigators had received from a confidential informant and then corroborated during the traffic stop, Detective Sharp also explained that based on his personal experience with drug conspiracy investigations, he knows that drug dealers often store contraband and the "proceeds of drug sales" in both their "own residences" and "locations which they control but which are titled in the names of others." Search Warrant Aff., R. 138-1, PageID 371; *see also United States v. Reed*, 993 F.3d 441, 452 (6th Cir. 2021) (reasoning that an affiant's training and experience supports official reasonable reliance on the warrant); *Neal*, 106 F.4th at 573–74 (same).

Under this court's precedents, those pieces of information are more than enough for a minimally sufficient nexus. The level of detail in the affidavit here stands in contrast to the conclusory and minimal affidavits that this court has found to be so "bare bones" as to render officers' reliance on them unreasonable. *See, e.g.*, *Laughton*, 409 F.3d at 751 (holding that the

good-faith exception did not apply where the affidavit "simply listed the address of the premises to be searched, a summary of the [officer's] professional experience, and two acontextual allegations against [the defendant]").

Scales's arguments to the contrary do not persuade us otherwise. *First*, Scales contends that the warrant did not supply an adequate nexus because the affidavit did not explain whether the confidential informant was known to the officers, was reliable, or was credible. Scales ignores that the officers did not simply take the confidential informant's word for it. Rather, they waited to apply for a warrant until they had corroborated the informant's information: they identified Emily and her apartment, and then confirmed through the traffic stop of the Jeep that Scales and Davis were dealing drugs and had a key to the apartment. *See White*, 874 F.3d at 497–98.

*Second*, Scales argues that the informant's information was "stale" because the officers had received it one month before when Detective Sharp filed the warrant application. Appellant Br. at 6. But this court has previously held that a tip "was not stale although offered five months before the warrant." *United States v. Moore*, 661 F.3d 309, 313–14 (6th Cir. 2011) (citing *United States v. Hammond*, 351 F.3d 765, 771 (6th Cir. 2003)). And here, the informant did not describe a simple passing sale or transient action; the informant detailed an ongoing multi-state drug operation that was operating out of an apartment that contained significant quantities of cash and drugs. *See United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006) ("The passage of time becomes less significant when the crime at issue is ongoing or continuous and the place to be searched is a secure operational base for the crime."); *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001) ("Evidence of ongoing criminal activity will generally defeat a claim of staleness.").

*Finally*, Scales points to several of our prior cases affirming denials of motions to suppress and contends that in each case, the search warrant affidavit provided "more" than the affidavit

provided here. Appellant Br. at 11. He relatedly argues that the officers could have done more "independent investigation" before applying for a warrant, emphasizing that the officers did not conduct surveillance of the apartment, which would perhaps have allowed them to confirm that evidence of drug trafficking could be found there. *Id.* at 18. But the question is not whether the warrant affidavit here precisely matches one this court has previously approved, or whether officers could have strengthened the case for probable cause through additional investigative activity. We evaluate a search warrant affidavit based on "the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc). Here, as explained, the affidavit provided a minimally sufficient nexus connecting the apartment to evidence of drug dealing. That ends our inquiry. We hold that the district court correctly concluded that officers were entitled to rely on the search warrant in good faith.

## CONCLUSION

We affirm the district court's denial of Scales's motion to suppress.